Please be seated. Would the clerk call the next case, please? 3-23-0184 Henry Mary Custody, or Jim Neskey, accolade by Michael Stoll and colony Jim Neskey, appellate by Randall Miller. Thank you. Mr. Miller? Good morning. Good morning. May it please the court. Honorable Justices, Randall J. Miller for the appellant and the maintenance obligee in this case, Colleen Januszewski. I'd like to thank the court for granting us its valuable time for this oral presentation in person. It's an honor to be here. I'd also like to thank the members of your clerk's office for their professionalism in this process. This case centers around a contract, a marital settlement agreement. Used interchangeably, the Supreme Court has ruled that the standard of review is de novo and contract rules apply. The party's intent is obtained from the language of the agreement and read as a whole. The agreement was incorporated into the judgment in 2016. Main provisions at issue regarding permanent maintenance with no termination date, and a specific amount in a monthly payment, and a provision for sharing bonuses, which is always a moving target. Further on in the agreement, it says that this agreement shall not be changed or modified by any court, and any change by the parties would require the same formalities as the execution. And there's no agreement here to terminate maintenance. The other usual relevant recitals in the agreement are freely and voluntarily entered without address or coercion, full knowledge of the provisions, the respective consequences, all changes have been addressed, and all with the benefit of counsel. The parties specified that the terms are contractual and not mere recitals, and it was signed free and voluntarily. Obligor filed a motion to modify the maintenance early this year. Were both parties represented by counsel? I'm sorry? Were both parties represented by counsel? Yes, Justice. When he filed his motion to terminate or modify early this year, my client and I filed a complaint for declaratory judgment that it was non-modifiable under its own terms. Arguments were heard. The court denied my complaint and made findings under Rule 304A that brought us here. Counsel, under Article II, Maintenance, Section 2.3, when it makes reference to, I'm reading from MSA, husband shall pay to wife pursuant to statutory guidelines, what do you believe that clause, pursuant to statutory guidelines, means? Well, in this case, I would say it means that the payments have to be on time, they have to be in the agreed amount, they have to be paid, whether it's a withholding order or whatever else. That's what you believe the statutory guidelines reference means, not as to termination, nothing like that, death, pay, or none of those statutory guidelines? Well, no, I agree that it would apply to all statutory guidelines, including maintenance, whatever statutes are involved, including maintenance. In this case, specifically 502F. Okay, thank you. The statute that we're talking about here, about maintenance, allowed the parties, it was, by the way, recently amended at the time of our judgment, and it allowed the parties to enter into agreements regarding maintenance, and it allowed the parties to say maintenance is non-modifiable in amount, duration, or both. The parties agreed, in this case, it was non-modifiable by those two catch-all agreements. I'm relying on the Ball case, and I'm sure you're very familiar, but you did cite, Justice McDade, you did cite the Scarp case, and that's a very important case. Both of them are, because they dispense with all of the appellee's arguments. The Ball case was actually in the courtroom next door to this case in Will County. Just for the record, Ball was a Rule 23, so you can't rely on it. I understand, Justice. We did cite it in the trial court for precedential value, but the Scarp case was a reported case. In the appellee's brief on page four, and they're heading C, they clearly advance the argument that when you say permanent maintenance, that renders null and void any provisions that says that maintenance is non-modifiable. They say that again halfway down that same page. They simply say permanent maintenance is always modifiable. This argument was held to be entirely disingenuous in this court's Rule 23 ruling, and in Scarp, and Schweitzer, which was cited by Scarp. I apologize at this juncture for the length of my quotations from the Scarp case. I tried to condense it, but because of its importance in our matter, I couldn't do it. I couldn't do it any more efficiently than the writers, and I don't think my condensed version with a simple cite would afford it its proper weight. But those cases say clearly that catch-all provisions applying to non-modifiability are enforceable. And it goes back as far as 97 with that Schweitzer case, saying that they don't have to be in the same clause as the maintenance provision. Now, Apelli on their brief, page 4 and 5, tried to claim that somehow this would result in an unconscionable or absurd marital settlement contract. In other words, by reading it the way it was written, it wouldn't be conscionable. This argument was rejected in Scarp as well, because at the time they reviewed that case, the obligor was making less money than the obligee. The court said nothing about the party's current income justifies a departure from the plain language of the agreement of the MSA. Another reason for my lengthy quotes from the Scarp case is that it goes on to address the applicability of a then new statute, which is ours. And it first says that the court discerned that the plain language of the amended statute was there was nothing in there that intended the change of catch-all agreement being enforceable. Second, referring to a recently then decided Dinoco case, one of the agreements that parties are allowed to make is that maintenance is entirely non-modifiable. And a catch-all agreement that maintenance shall not be modified is an agreement that maintenance is entirely non-modifiable. And finally they said the non-modifiable term of maintenance can be implicit where the parties use a catch-all agreement stating that the MSA in its entirety shall not be modified. Appelli in their brief, page three, says, well, the parties made a 50-50 asset distribution and this would be unfair if you enforced the terms as they were written. The Scarp case goes on to say the intent of the parties regarding non-modifiability is found in the marital settlement agreement, supported by those other various recitals that I previously named. Appelli's argument doesn't consider unstated claims. For example, when we reach an agreement here, the value of assets, non-marital property, dissipation, anything negotiated away in the give and take of the settlement negotiations. Stated differently, I argue that the agreement and the division of assets of 50-50 approximately was because maintenance was permanent and non-modifiable. In my reply brief under page four, I believe, I did have a proofreader's error where I left out the word modification in the heading. Maintenance modification is not triggered by a substantial change in circumstances as argued by the Appelli. They build this argument for the modifiability of maintenance on the premise that a substantial change would trigger reviewability of the maintenance position. However, the exact amount of the maintenance here was stated, including a mechanism for bonuses, and the catch-all agreement were clear and enforceable. Appelli attempts in their argument, their brief page five, to distinguish Ball, Scarp, and Schweitzer by saying that their marital agreements had different terms than ours, stating they all had termination terms in their agreements, and thus their catch-all agreements were enforceable. And I say that argument defies logic. They're saying permanent maintenance with termination factors is non-modifiable, but our maintenance with no termination factors is modifiable. The common sense reading is clearly maintenance, permanent maintenance is permanent unless it's modified, and enforceable catch-all terms in this case say it's non-modified. The terms of our agreement are consistent with those that were historically allowed, and according to the Dinoco case and the Scarp case, that has not changed by the statute that went into effect just before our judgment. The current version of the statute cited by Appelli for the court to review specifically excludes our case by saying, except as otherwise provided in paragraph F of section 402, that's clearly our case. They cite four cases, Chalky, Scott, Simmons, Sutton, and all of those cases predate the Scarp case and the Dinoco case. And they are not inconsistent. Finally, they argue that an interlineation on the day of approval for the court to reserve jurisdiction over husband providing life insurance as a beneficiary to the obligee. Well, there are any number of reasons that the court would have approved that interlineation, including the cost, the age, availability of insurance to the respective party, new employment, Obamacare. The court's jurisdiction was only reserved on that issue, the life insurance in the event the obligor lost his job or lost his insurance. Did that language, in fact, indicate that the life insurance would be paid for so long as he was employed and had the obligation to pay maintenance? Yes. So it was intended that the life insurance might not apply if he did not have an obligation to pay maintenance? Yes. So it was anticipated that at some point he might not have an obligation to pay maintenance? Well, I don't know that it's anticipated. Okay, thank you. If I could elaborate. The life insurance modification was to allow the court, in the event he lost his job or the coverage, to review that, to keep jurisdiction over that. I don't know that there's any anticipation with the terms of the agreement. Otherwise, that the maintenance would be someday terminated. There was no termination factors in the agreement, and other than the statutory factors, that would have been all anticipated. The parties could have modified by agreement? Yes. By written agreement? Yes. So there was that option? Yes. That it could go away for that reason? Yes. In this interlineation, there was no expression or mention of modification of maintenance in this? And the construction rule of expression of one thing is the exclusion of others applies? The parties on that day excluded any other changes to the contract? And leaving in the expressed terms that say that the terms are not modifiable by a court or the parties without agreement? And again, this exact theory was raised in SCARF, where the terms of that agreement said the party's current income and annual exchange of tax returns were mentioned and predicated on the maintenance. And so the argument was, well, if you enforce non-modifiable maintenance, the parties' terms about current income and exchanging tax returns become meaningless.  And the court said, we don't find anything that renders those terms meaningless by enforcing the non-modification clause of your agreement. And it's the exact same facts in our case. It doesn't render that term meaningless. I saw a declaration. Am I out of time? I'm sorry. The red light right there. Yes. You have five minutes for referral. I saw the declaratory judgment, which says that... No, not now. Pardon me? Not now. At the conclusion of the release case, you have five minutes left. I'm sorry. That's what I thought. Thank you. So, Mr. Stoll. Good afternoon. Good morning. Good afternoon. Good morning, honorable justices. If it may please the court, my name is Michael Stoll. I'm here on behalf of the maintenance payor, Mr. Januszewski. And I'm going to just outline my argument here this morning, really into two parts. We see this as, in part one, the definition of permanent maintenance. The phrase permanent maintenance being a term of art, as it's stated in the case law. The application of the various cases, the cases... Unfortunately, I was on the losing end of Ball. I feel like this is deja vu all over again. But as the court pointed out, that was a Rule 23 case. But distinguishing Ball, the Scarp case, the Schweitzer case, and the Dinoco case. And then the second part of the argument is the, as you will, the absurd results that would ensue were the appellant's argument to hold true. So starting off with the definition of permanent maintenance. Permanent maintenance is a term of art in family law, just like living separate and apart is. Courts have interpreted these terms and phrases through the years, where it might not mean the same thing to people on the street, but it's interpreted differently in the courts. And as we stated in our brief, in the Shen case, permanent maintenance is not supposed to be infinite. It's not meant to be everlasting. It's supposed to be for an indefinite period. The term permanent was at one time in the statute. There was a modification to the maintenance statute, which changed the term from permanent to indefinite. It's a term of art because, as stated in Shen, as well as in Wojak, the term permanent maintenance is always modifiable. There are various classes of maintenance. There's maintenance in gross, which is, in effect, I'll put it simply, could be termed a lump sum, non-modifiable maintenance. There's rehabilitative maintenance. There's permanent maintenance. And there's reviewable maintenance. By the nature of being permanent maintenance, it's always modifiable because it's not to set a time period upon which either party would come to the court and ask for a review. It's upon when a substantial change in circumstances occurs, which then, by operation of law, someone could come in and say, a substantial change has occurred. We're now seeking a modification. Counsel, would you agree that difference in the terms of permanent and reviewable might have to do with the level of review that's necessary of the trial court? Whether it is a de novo review, if it's reviewable maintenance, what was the standard of living at the time of the marriage, versus modifiable, which is not a de novo review? That's correct, yes. I would agree with Your Honor. As it relates to the distinguishing these cases, Ball is the only case that draws this distinction in a class of maintenance. SCARP does not title maintenance as reviewable, rehabilitative, permanent, maintenance in gross. It does not put it in a specific class. Neither does Schweitzer. Neither does Dinoco. Ball does provide that it is permanent maintenance, but there's a couple of distinctions between Ball case and this case. First, in Ball, there are termination factors, and they are what we would call the 510 statutory termination factors, essentially death of either party, remarriage of the maintenance recipient, or cohabitation by the maintenance recipient. In this case, there is no termination factors. Secondly, the catch-all provision in Ball is definitive. It does not say except as otherwise provided herein. It's definitive. It's non-modifiable as it relates to the entire agreement. Here in this case, there are two provisions that speak to the catch-all nature of the non-modifiability. One of the provisions, Article 11.10, provides that except as otherwise provided herein. We submit to the court that since there's a reference to permanent maintenance, which is always modifiable, that in fact, that allows Mr. Januszewski to come before this court, or come before the lower court, and seek a modification in maintenance. Going back to the significance of the termination factors, each of the cases that were cited that had a catch-all, Dinoco doesn't even deal with a catch-all. I know that that was cited by the parties, but in that case, it was clear that the maintenance provision said it was non-modifiable. It's kind of a novel, narrow argument in that case. But in Schweitzer, in Scarp, and in Ball, there were termination upon death. In this case, there's no termination upon death. And this is where we get into the absurd results. One could argue that Mr. Januszewski is going to have a maintenance obligation even in death if the appellant's argument is to stand. How do you rectify the language in the MSA that talks about statutory guidelines? Yes. I interpret that as statutory guidelines as it relates to amount and duration. This was a marriage in excess of 20 years. Parties were married in 1981. The case was filed in 2015. So the statutory guidelines as it relates to duration put this case in an indefinite maintenance or permanent maintenance, as I believe it was titled there at that time, duration. So that's how we interpret the reference to the statutory guidelines. And again, that goes to our argument that permanent maintenance by its definition is modifiable as interpreted by Illinois courts. As it related to... As it relates to the question regarding the life insurance obligation that was brought up in the appellant's argument. As we stated in our brief, the agreement provides that either upon Mr. Januszewski's loss of employment or upon not having an obligation to pay maintenance, the court can revisit, the parties can revisit the obligation to maintain life insurance. As we argued in our brief,  if one were to interpret that permanent maintenance wasn't modifiable. It was always contemplated that it was modifiable by use of the word permanent maintenance. There's references as in that life insurance provision that relate to the intent of the parties that there is going to be a modification. And... Where is that? The life insurance quote, Your Honor? I just want to make sure. Where is it that the parties intended for there to be modifications? It's our position by use of the term permanent maintenance, which has been interpreted as being modifiable, subject to modification. Okay. What I was stating about the life insurances, counsel's argument is that we have to look at the agreement as a whole, and that there is a non-modifiable provision in the catch-all. We also have to look at the agreement as a whole, looking at the life insurance provision, which does contemplate that there could come a time where Mr. Janiszewski does not have the obligation to pay maintenance. If we were to take the appellant's argument as true, there would never be, never be a situation where Mr. Janiszewski wouldn't have an obligation to pay maintenance, even in death. So the court needs to look at the entire agreement as it relates to the catch-all, but also the other provisions, namely the life insurance provision. And I know that I have time. Yes. I apologize just for a second. No, go ahead. I just want to be clear. It's not your position that parties could not negotiate a situation where maintenance could never be reviewed or modified. That's not your position, is it? That is not my position. No, we believe that we're not arguing against the applicability of the catch-all provisions. We believe that maintenance can be agreed upon to be non-modifiable. Just in this case, the term of permanent expresses an intention that it's in fact going to be reviewed and modified at some point. Because I'm not understanding your death argument. I'm not receiving a single court anywhere in the state of Illinois suggesting that in the state you have to pay maintenance. So I'm not finding that particularly compelling. Understood, Your Honor. Understood. We're arguing because in those other cases where there were catch-alls and there were limitations on the ability to seek a termination, each case cited the death clause. One could argue here that since we didn't cite the death clause or neither party cited the death clause, that it's then, and the modification provision holds, that even in death, the estate would owe a maintenance. The death provision seems to always apply to the person receiving the money, not to the person paying. I would disagree. I believe that my recollection of 510 is death of either party. Death of either the maintenance recipient or death of the maintenance payor. The parties can contract to modify the terms of 510, the statutory provisions. And again, I know I'm beating a dead horse here, but if you are to accept that argument, then the parties contracted then, in effect, in this case, that he would even pay in death since it's not modifiable. And that's what you're... But what is the obligation to continue to pay life insurance if, in fact, he was obligated to always pay maintenance? Correct. It would just be a standing... The language then should have said that he has an indefinite or forever obligation to pay life insurance. It wouldn't be predicated upon either a loss of employment or not having a maintenance obligation. Was Mr. Januszewski represented by counsel? He was, Your Honor. Was that you? No, it was not. Oh, okay. No. I don't have anything further unless if Justices have any questions based on my argument. Thank you. I do not. Thank you. Thank you. Thank you, Mr. Stoltz. Mr. Miller, any rebuttals? Just briefly, Judge, I was simply going to point out earlier in my argument that I had sought the declaration a declaratory judgment action and I believe we're eligible for it and I believe the denial of it was incorrect under existing case law and I would ask that that ruling be reversed. Thank you. All right. If there's any other questions. No, thank you. No, thank you. Thank you. We thank you both for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.